Burks, J.,
delivered the opinion of the court.
This was an action of debt in the court below against G. A. Hinguid, surviving partner of himself and H. P. *804 ■^n£a'<^> deceased, on a promissory note of the firm, dated July 1, 1858, and payable one day after date. The suit commenced on the 29th of March, 1875. There were several pleas, but the only defence w’as under the plea of the act of limitations. To this plea the plaintiff replied specially under the statute a promise of the defendant in writing, within five years before action brought, to pay the debt in the declaration demanded. Neither party demanding a jury, the court proceeded to try-the issue joined on this replication, and, having heard the evidence, gave the plaintiff a judgment for a balance due on the note, with interest and costs; to which judgment the defendant excepted, and was allowed a writ of error by one of the judges of this court.
The only evidence introduced on the trial was the note .sued on and a portion of the record of a chancery suit lately pending in- the corporation court of the city of Lynchburg. That suit appears to have been instituted by some of the heirs and distributees of the decedents, Samson Dinguid and D. P. Dinguid, against the defendant, G-. A. Dinguid, (among others), as one of said heirs and distributees, and also as surviving partner of the late firm of D. P. & G. A. Dinguid, for the purpose of settling up and distributing the estate of the said Samson Dinguid and of settling the partnership transactions- of the said firm of D. P. & G. A. Dinguid.
It is shown by the final decree in said cause, which is set out in the bill of exceptions, that under a previous decree the plaintiff in error here (G. A. Dinguid) had become the purchaser of a cabinet shop and lot in the city of Lynchburg, which was a part of the estate of the de- . cedent, Samson Dinguid, and had given his bonds, with surety, for the purchase money. Tn that estate the plaintiff in error was entitled to a one-third interest as heir, to another third as purchaser from other heirs, and the remaining third belonged to the heirs of D. P. Dinguid, the *805 deceased partner of the firm] of D. P. & G. A. Dinguid, chargeable, however, with the debts of the said firm. Some of these debts had been paid by the plaintiff in error surviving partner, and others were outstanding and unpaid, and among the latter was the debt which is the subject of the present action.
To ascertain these debts, an account was ordered to be taken by a commissioner of the court. In taking the account, the plaintiff in error was examined as a witness by the commissioner, and his deposition, subscribed and sworn to by him, was filed with the commissioner’s report.
The first question propounded on the examination was this: “ What debts against the estate of Samson Dinguid, your father, are now outstanding and unpaid?”
The answer to the question, or so much of it as pertains to the case before us, is as follows: “ I know of only two debts or claims against the estate of Samson Dinguid, deceased.
1. A debt due to Schoolfield & Thurman. This debt was assumed by D. P. & G. A. Dinguid, and on a settlement made between the said D. P. & G. A. Dinguid and the said Schoolfield & Thurman, some years since, the said D. P. & G. A. Dinguid executed their note to the said Schoolfield & Thurman for the sum of $555.09, that being the balance due them as a settlement in full up to the date of the settlement. Since the date of that settlement, payments have been made to said debt, yet there is a balance of $-yet outstanding and due to the said Schoolfield & Thurman, it being the net balance after application of payments. This, is a just claim now against D. P. & G. A. Dinguid.”
In answer to a further question asking for a statement of the outstanding debts of D. P. & G. A. Dinguid, the deponent refei’s to a previous report of the commissioner for an account of those debts, and after specifying sundry payments since the report was made, says, “ My intention *806 has always been to pay every debt against D. P. & G. A. Dinguid, and I think I have paid some other amounts, -but cannot say what debts they are.”
The other portions of the deposition have no relevancy [ to the question before us. Upon this deposition, the commissioner made a report of the outstanding debts of D. P. & G. A. Dinguid, including the debt which is the subject of the present controversy. That debt was stated and the payments referred to in the deposition were applied, ascertaining a balance of $538.36, principal money, to be due and unpaid as of the 15th day of January, 1864. It was for this balance that the circuit court rendered the judgment complained of.
The commissioner’s report was returned within fifteen days after the deposition was taken. There was no exception to it, and on the hearing of the cause at the succeeding term the court made a final decree, by which, after reciting that it appears that the said G. A. Dinguid is entitled to an interest of two-thirds in the estate of Samson Dinguid, deceased, “ and that as surviving partner of the firm of D. P. & G. A. Dinguid, he is charged with and will have to pay on account of said firm more than double the amount of the value of the third interest of D. P. Dinguid’s heirs in the said estate of Samson Dinguid, and that there will be nothing left for distribution to the heirs of D. P. Dinguid after a settlement of his debts and liabilities,” it was adjudged, ordered, and decreed, “that the three several bonds for the purchase of the cabinet shop and lot on Main street, in Lynchburg, belonging to the estate of Samson Dinguid, executed by G. A. Dinguid, the purchaser of said property, with-Davidson as surety, each for the sum of $--, be canceled by Commissioners Craighill and Daniel, to whom they were payable; and that said commissioners do proceed to execute a deed in fee simple for the cabinet shop and lot, to G. A. Dinguid, with special warranty of title.”
*807 It was upon the evidence, which has been substantially • -i-T . . . recited, and more particularly upon the deposition or the plaintiff in error, subscribed and sworn to by him, and given without compulsion and in his own interest, in a suit to which he was a party, and upon which deposition mainly, if not wholly, a decree was based for his own relief and benefit, that the judgment complained of was rendered.
The judgment is alleged by the learned counsel of the plaintiff in error to be erroneous on two grounds, which will be more conveniently considered in the inverse order • in which they are stated in the petition:
1. It is not open to question thafthe debt referred to in the deposition as a debt due to Schoolfield & Thurman is the same debt for the recovery of which the present action was brought. The identity is beyond dispute; but it is insisted that the acknowledgment relied on is of an unascertained balance, and too general and indeterminate to raise an implied promise of payment. There is no doubt the plaintiff, to maintain the issue on his part, was bound to prove the promise alleged in his replication. He was not required to prove an express promise. It was sufficient for him, under the statute, to establish an acknowledgment in writing, from which a promise of payment might be implied. Code of 1873, ch. 146, §10. ' Such acknowledgment, to be effectual, must not consist of equivocal, vague and indeterminate expressions; but ought to contain an unqualified and direct admission of a previous, subsisting debt, which the party is liable for and willing to pay. Story, J., in Bell v. Morrison & others, 1 Peters’ P. 351, 362. The same rule is laid down, with some variety of expression, by other judges. A distinct and unqualified acknowledgment would have the same effect as a promise, because from such an acknowledgment the law implies a promise to pay. Tindall, Ch. J., in Linsell v. Bonsor, 2 Bingh. N. Cas. 241, (29 Eng. C. L. *808 R. 319). If an acknowledgment is relied on, says Judge ' . ° ’ J . .& Parker, it ought to be a direct and unqualified admission a present subsisting debt, from which a promise to pay would naturally and irresistibly be implied. Sutton v. Burruss, 9 Leigh, 381. If there be an unequivocal admission that the debt is still due and unpaid, unaccompanied by any expression, declaration or qualification indicative of an intention not to pay, the state of facts out of which the law implies a promise is then present, and the party is bound by it. Johnson, J., in Young v. Monpoey, 2 Bailey, (So. Car.), 278. It is needless to multiply authorities for the proposition stated, but the following may be consulted: Bangs v. Hall, 2 Pick. R. 368; Baily v. Crare, 21 Pick. R. 323; Russell v. Copp, 5 N. Hamp. R. 154; Head’s ex’x v. Warner’s adm’rs. 5 J. J. Marshall R. 255; Peebles v. Mason, 2 Dev. R. 367; Aylett’s ex’or v. Robinson, 9 Leigh, 45; Sutton v. Burruss, Id. 381; Butcher v. Hixton, 4 Leigh, 559; opinion of Moncure, J., in Bell v. Crawford, 8 Gratt. 110.
Becurting to the statements contained in the deposition, a very slight examination will suffice to show that the balance there admitted to be due is by no means uncertain and indeterminate. It is true it is stated to be “a balance of $-yet outstanding and unpaid but it is also stated as “ being the net balance after application of payments.” The deduction of the payments would show the “ net balance,” and it was the business and duty of the commissioner to make that deduction upon the evidence furnished by the plaintiff in error for that purpose. That evidence was furnished, the payments applied, statement made, and balance definitely ascertained. The acknowledgment was, in substance, of the balance thus to be ascertained, and a calculation of the simplest character was all that was necessary to show the amount. The old maxim, id cerium, est quod certum reddi potest, applies.
2. The next and only remaining ground of error alleged *809 is, that the plaintiff not being a party to the suit in which ’ r b l- j the deposition was taken, the statements therein cannot be construed as admissions or acknowledgments made to and that no promise of payment can be implied from an acknowledgment of a debt so as to take it out of the operation of the act of limitations, unless such acknowledgment be made to the creditor to whom the debt is owing, or to some person representing him by authority.
In Joynes on Limitations, 120, the learned author says of the question here presented that “ since it has been established that a new promise, express or implied, is.necessary to defeat a plea of the act of limitations, and that such new promise operates as a. new cause of action, it has been frequently held, as it was before, that the promise need not be made directly to the creditor himself, or to any person representing him, or entitled to demand payment of the debt, but may be made to a third person, or inferred from an acknowledgment inter, alias;” and he cites many cases in which the principle is applied.
He refers also to several elementary works, among them 2 Story’s Eq. Juris. 909 (ed. 1843), in which the contrary •doctrine is laid down and the authorities for it cited, which, in his opinion, do not sustain the text. But he concludes what he has to sayón the subject with the remark (p. 123), that “ the doctrine in question certainly furnishes a valuable security against the inference which has too often been drawn- from careless conversations with third persons, and tends strongly to advance the policy of the legislature.”
Since the publication in 1844 of this excellent treatise on limitations, there have been numerous decisions, both in England and the United States, adverse to the views expressed by the distinguished author, and it. is said, in a recent work of merit, that according to the very decided weight of the latest decisions in this country, a promise to pay a debt, made to a person not legally or equitably interested in the same, and who does not pretend to have had *810 any authority from the creditor to call upon the debtor in . r relation to the debt, will not avoid the bar of the statute. support of this proposition the following cases are cited, which we have examined, and they seem to be in point t Ringo v. Brooks, 26 Ark. R. 540; Gillingham v. Gillingham, 17 Penn. St. R. 302; Moorehead v. Wriston, 73 N. Car. R. 398; Parker v. Sherford, 76 Id. 219; Wachler v. Albee, 80 Ill. R. 47; McGrew v. Forsyth, Id. 596; Kisler v. Sanders, 40 Ind. R. 78; Sibert v. Wilder, 16 Kans. R. 176; S. C. 22 Am. Rep. 280; Fletcher v. Updike, 3 Hun. 350; Cope, Girarden County v. Harbison, 58 Mo. R. 90 ; Trousdale v. Anderson, 9 Bush. (Ky.) R. 276. See also the cases referred to in notes of the American editors to Whitcomb v. Whiting, 1 Smith’s Lead. Cas. Part 2, marg. p. 726, where it is said to be well settled, both on authority and principle, that the debt will not be revived by an entry or memorandum, not forming part of a mutual account, on the. books or papers of .the debtor, or by a mere declaration or admission to a third person, meant only for his ear, and not intended to be communicated to the creditor.
The diversity in the earlier and later decisions is attributable, for the most part, to the different and somewhat antagonistic theories entertained at different periods concerning the design and policy of the statute. Under the leadership of Lord Mansfield, it was for a long time considered and held that under the statute lapse of time raises a mere presumption of satisfaction, which, like other presumptions, might be repelled, and hence that a new promise of the debtor, whether express or implied, was only evidence of the pre-existing debt and gave no new cause of action. Subsequently, this theory was overturned and succeeded by a course of decision, initiated and fostered by Chief Justice Best, which regarded and construed the statute as one of repose, and the new promise as a new contract and actionable as such. This view is now generally *811 accepted. Sibert v. Wilder, 16 Kans. R. 176, and cases r -tit-cited. It would seem to follow logically that the promise, to be sufficient to take a case out of the statute, should made directly or mediately to the creditor, or at least for his benefit, so that he may be able to maintain an aotion upon it. It is said that the declaration or admission to third person is deemed insufficient, not so much because the acknowledgment is made to a stranger as because there is no sufficient evidence of an intention to contract. 1 Smith’s Lead. Cas. Part 2, marg. p. 976.
We do not consider the judgment under review as conflicting with the recent decisions which have been cited. The deposition of the plaintiff in error was given, probably, at his own instance, for the very purpose of establishing, among other claims, the validity and binding force upon him of the debt, the recovery of which is now sought to be defeated by reliance on the act of limitations, and it was because of his sworn statements that he received credit for the debt on his bonds. He must therefore be understood to have intended that his acknowledgment of the debt, under the attending circumstances, should be accepted as such and confided in and acted upon by the creditor to whom the debt was due. He cannot be allowed to take the benefit of the acknowledgment and then repudiate its obligation.
For the reasons stated, we are of opinion that there is no error in the judgment of the circuit court, and that it should be affirmed.
Moncure, P., concurred in the result.
Judgment' affirmed.